UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| BRANDON P. RUSSELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:15-CV-456-TAV-CCS |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the and the Rules of this Court for a report and recommendation regarding disposition by the District Court of the Plaintiff's Motion for Judgment on the Pleadings and Memorandum in Support [Docs. 12 & 13] and the Defendant's Motion for Summary Judgment and Memorandum in Support. [Docs. 16 & 17]. Brandon P. Russell ("the Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of the Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").

On April 5, 2012, the Plaintiff filed an application for disability insurance benefits ("DIB") and supplemental security income ("SSI"), claiming a period of disability which began August 1, 2007. [Tr. 94-103]. After his application was denied initially and upon reconsideration, the Plaintiff requested a hearing. [Tr. 62]. On March 31, 2014, a hearing was held before the ALJ to review determination of Plaintiff's claim. [Tr. Tr. 26-44]. On August 14, 2014, the ALJ found that the Plaintiff was not disabled. [Tr. 5-25]. The Appeals Council denied the Plaintiff's request

for review [Tr. 1-3]; thus, the decision of the ALJ became the final decision of the Commissioner.

Having exhausted his administrative remedies, the Plaintiff filed a Complaint with this Court on October 9, 2015, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 2]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication. The Court notes that the Commissioner's brief explains that the Plaintiff previously filed applications for DIB in October 2003, March 2008, and July 2010. [Doc 17 at 1 (citing Tr. 106)]. The Commissioner asserts that the Plaintiff's alleged onset date in the instant case expired prior to a previous final determination of the Plaintiff's claim for DIB. [Id. at 2]. As a result, the Commissioner submits that the Plaintiff's claim for DIB in this case is not subject to judicial review. [Id.]. Because the Plaintiff bears the initial burden of showing he is entitled to benefits and has not responded to the Commissioner's assertion, the Court will limit its review to whether the Plaintiff is entitled to SSI only.

## I. ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2009.
>
> 2. The claimant has not engaged in substantial gainful activity since August 1, 2007, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).
>
> 3. The claimant has the following severe impairments: chronic back pain, anxiety and depression. (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination or impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404. Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can sit up to forty-five minutes at a stretch and [] must be permitted to change positions; stand and/or walk for up to two hours at a time and for four hours total in an eight-hour workday; he must avoid heights and other hazards, crawling and climbing ladders, ropes or scaffolds; can occasionally climb ramps and stairs, balance, stoop, kneel or crouch; he must avoid ongoing interaction with the general public; can tolerate occasional interaction with coworkers; is limited to simple one to three-step tasks; and changes in the workplace cannot be frequent but do not need to be infrequent either.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on February 21, 1979 and was 28 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advance age (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English. (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 1, 2007, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 10-19].

## II. DISABILITY ELIGIBILITY

This case involves an application for SSI benefits. An individual qualifies for SSI benefits, an individual must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). A claimant will only be considered disabled if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B); see 20 C.F.R. § 415.905(a).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). The claimant bears the burden of proof at the first four steps. Id. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. 42 U.S.C. § 405(g); Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994) (citing Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981)) (internal citations omitted).

It is immaterial whether the record may also possess substantial evidence to support a

different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984) (citing Myers v. Richardson, 471 F.2d 1265 (6th Cir. 1972)).

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

**IV.    POSITIONS OF THE PARTIES**

On appeal, the Plaintiff argues that the ALJ's decision is not supported by substantial evidence in that it is inconsistent with the medical opinions of treating physician J.T. Mandrell, M.D., and consultative examiner William Kenney, Ph.D. [Doc. 13 at 7-10]. The Plaintiff contends that the ALJ did not weigh the opinions in accordance with Agency regulations and did not provide an adequate explanation for discounting either opinion. [Id. at 8-9]. According to the Plaintiff,

6

the ALJ erroneously substituted her opinion for that of Dr. Mandrell and also misstated findings made by Dr. Kenney. [Id.].

The Commissioner argues that the ALJ properly considered the medical opinions and explained the weight given to each source. [Doc. 17 at 4]. The Commissioner submits that the ALJ articulated good reason for discounting Dr. Mandrell's opinion, including that it was not supported by objective medical evidence, reflected complete acceptance of the Plaintiff's subjective allegations, and was inconsistent with his own treatment records. [Id. at 6-7]. Additionally, the Commissioner contends that substantial evidence supports the ALJ's conclusion that Dr. Kenney's opinion was not supported by his own examination findings, nor was it entirely supported by the record. [Id. at 12-14].

## V. ANALYSIS

The Court will address the Plaintiff's allegations of error in turn.

### A. Treating Physician J.T. Mandrell, M.D.

The Plaintiff argues that the ALJ did not properly address Dr. Mandrell's opinion pursuant to the treating physician rule, nor did the ALJ give good reason for assigning the opinion little weight.

Dr. Mandrell began treating the Plaintiff in 2007 for back and leg pain, as well as spinal stenosis. [Tr. 932]. An MRI of the cervical and thoracic spine performed in November 2006, however, only reveled a congenital small lumbar canal and a slight focal central protruding disc at L5-S1. [Tr. 206]. The Plaintiff was referred to William Reid, M.D., in December 2007 for a neurological consult. [Tr. 924-25]. Dr. Reid confirmed that the Plaintiff had a congenitally small lumbar canal, but he did not have sufficient stenosis to warrant surgical intervention. [Tr. 920].

7

A cervical MRI was also noted as normal. [Id.]. Dr. Reid advised that the best approach was to proceed with physical therapy, exercise, and anti-inflammatory agents. [Id.]. Dr. Mandrell referred the Plaintiff to physical therapy in March 2008. [Tr. 910].

The record suggests that the Plaintiff did not attend physical therapy[1] and, instead, Dr. Mandrell treated the Plaintiff almost exclusively with chronic narcotic pain medication. Dr. Mandrell initially treated the Plaintiff's back and leg pain with monthly prescriptions of Percocet [Tr. 928-51, 953-56], but changed to oxycodone 15 milligrams four times a day after the Plaintiff complained of severe back and buttock pain with straight-leg raising in October of 2007 [Tr. 925]. By March the following year, Dr. Mandrell increased the Plaintiff's oxycodone prescription to 30 milligrams four times a day due to complaints of left radicular leg pain with movement. [Tr. 908]. The Plaintiff's oxycodone intake was again increased in April 2008 to 30 milligrams six times a day, because the Plaintiff complained that a recent epidural injection resulted in more pain. [Tr. 890]. In fact, the pain resulting from the epidural required an emergency room visit. [Tr. 893]. An MRI of the lumbar spine, however, revealed normal findings, and a physical examination contemporaneously performed yielded negative straight-leg raise testing, no changes in sensation, and normal muscle strength. [Tr. 292, 294, 298].

The Plaintiff continued to receive high doses of oxycodone every month, but was only physically examined by Dr. Mandrell about every four months. Physical examinations often resulted in a hyper-reflexive left knee and positive straight-leg raise testing with left-side pain. [Tr. 495-563]. The Plaintiff testified his pain level was between an eight and a 10 even with pain medication [Tr. 37], but related to Dr. Mandrell his pain was between a three and five with

---

[1] The record does contain a single treatment note from Appalachian Therapy Center in which the Plaintiff was discharged from physical therapy due to "very limited and sporadic therapy" before the Plaintiff completely stopped attending. [Tr. 952]. However, the treatment note is dated February 7, 2007. [Id.].

8

medication. [Tr. 714, 1003, 1006]. In February 2013, morphine was added to the Plaintiff's medication regiment. [Tr. 973].

On several occasions throughout their treating relationship, Dr. Mandrell advised the Plaintiff that he needed to establish care with a pain management clinic. As early as April 2008, Dr. Mandrell referred the Plaintiff to a pain clinic. [Tr. 908]. By September 2008, the Plaintiff had yet to attend. [Tr. 462]. Dr. Mandrell noted that he "would not be able to continue to give large doses of this medication continually" and that the Plaintiff needed "something definitive done for his lumbar back and left leg sciatica." [Tr. 462-63]. At that point, the Plaintiff was being prescribed 30 milligrams of oxycodone nine times a day. [Id.]. The Plaintiff, however, never established care with a pain clinic. In June 2013, Dr. Mandrell again advised the Plaintiff he needed treatment from a pain clinic and would only "give controlled mediations for 1 more month." [Tr. 972]. Dr. Mandrell receded this statement the following month due to the Plaintiff relating that he could not afford treatment from a pain clinic. [Tr. 1006]. Dr. Mandrell assessed a "clinical diagnosis of sciatic to his left leg which may be spinal stenosis" and agreed to continue treating the Plaintiff. [Tr. 1006-08].

During the course of treatment, the Plaintiff was hospitalized for narcotic withdrawal. Specifically, in July and August 2008, the Plaintiff presented to the emergency room where he was diagnosed with gastroenteritis distress. [Tr. 228, 268]. Narcotic withdrawal was cited at the latter hospitalization as "contributing to the persistence of his symptoms," which included nausea, vomiting, and diarrhea, as the Plaintiff was unable to keep his pain medication down. [Tr. 486-87]. The Plaintiff had a similar episode in August 2013. [Tr. 1012]. The Plaintiff was hospitalized for opiate withdrawal after he ran out of his pain medication for two days. [Id.]. He initially agreed to rehab after his withdrawal symptoms resolved, but upon discharge the Plaintiff reported

9

that he was not interested in discontinuing his narcotic use and declined rehab. [Id.]. The last treatment note of record indicates that the Plaintiff continued being treated with narcotic pain medication, specifically, 30 milligrams of oxycodone four times a day and 60 milligrams of morphine twice a day as of January 2014. [Tr. 993].

Treatment notes reflect that Dr. Mandrell believed the Plaintiff was "permanently, totally, and completely disabled." [Tr. 335, 661, 973, 978, 981, 983, 1009]. A "Medical Source Statement" was completed on February 4, 2013, wherein Dr. Mandrell responded to several short-answer questions regarding the Plaintiff's alleged disabling impairments. [Tr. 968-70]. Dr. Mandrell opined that the Plaintiff suffered from degenerative disc disease of the spine and severe left leg sciatica. [Tr. 968]. Dr. Mandrell further opined that the Plaintiff's pain and medication prevented him from maintaining concentration or task performance for two hours at a time, that the Plaintiff would need unscheduled breaks during an eight-hour workday due to left leg pain, and that the Plaintiff would miss at least half-a-day of work at least twice a month because of severe pain. [Tr. 967-68]. Dr. Mandrell concluded that the Plaintiff's impairments would prevent him from completing an eight-hour workday on a regular, continuing basis. [Tr. 698].

In the disability decision, after providing a detail discussion of the medical evidence and the Plaintiff's treatment with Dr. Mandrell [Tr. 13-16], the ALJ expressed concern over Dr. Mandrell's chosen mode of care:

> As the foregoing discussion establishes, this claim involves a disturbing pattern of heavy dosages of narcotics by the claimant's longtime treating physician in spite of the claimant's dependence on these drugs, as evidenced by his recent episode of withdrawal, and the lack of diagnostic evidence of underlying stenosis in the claimant's lumbar spine. Recent comments by Dr. Mandrell demonstrate that his decision to continue with these dosages is based on clinical findings of left leg sciatica. Notably, his decision to rely solely on medication, and narcotics in particular, is inconsistent with

> a neurologist, Dr. Reid's, advice to use anti-inflammatory medications, exercise and physical therapy to treat the claimant's symptoms. Further numerous notations in Dr. Mandrell's own treatment records indicate that he had misgivings about continuing to provide large doses of narcotic pain mediation but that he has continued in spite of those misgivings. His decision to do so undermines the reliability of his conclusions and opinions in this case and the claimant's obvious reliance on narcotics and recent decision not to seek rehabilitation from their use raises questions about the sincerity of his assertions of constant, severe pain.

[Tr. 16]. The ALJ went on to note that imagining studies only showed slight disc protrusion at L5-S1 with no evidence of stenosis at any level, and that while Dr. Mandrell's examinations consistently demonstrated a hyper-reflexive left knee and positive straight-leg raise testing, other physical examinations, including that of consultative examiner Jeffery Summers, M.D., failed to show positive straight-leg raise testing. [Id.]. The ALJ recognized that the medical evidence demonstrated some level of underlying chronic back pain, but not the degree of debilitating pain alleged by the Plaintiff. [Id.].

The ALJ assigned "little to no weight" to Dr. Mandrell's opinion, citing concerns over Dr. Mandrell's approach to treating the Plaintiff. [Tr. 17]. In particular, the ALJ took issue with Dr. Mandrell's "wholehearted acceptance of the claimant's subjective account of his symptoms with little supporting objective medical evidence in the form [of] diagnostic test results," his decision to prescribe large doses of narcotic pain medication in the wake of the Plaintiff's narcotic withdrawals, and the lack of overall evidence in the record supporting Dr. Mandrell's conclusion that the Plaintiff's impairments are completely disabling. [Id.].

Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) is not inconsistent with the other

11

substantial evidence in the case record, it must be given "controlling weight." 20 C.F.R.§ 416.927(c)(2). When an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. Id.

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision. Id. A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (July 2, 1996). Nonetheless, the ultimate decision of disability rests with the ALJ. See King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984); Sullenger v. Comm'r of Soc. Sec., 255 Fed. App'x 988, 992 (6th Cir. 2007).

The Plaintiff contends that the ALJ's concerns over Dr. Mandrell's decision to treat the Plaintiff with narcotic medication runs afoul of the treating physician rule. [Doc. 13 at 9]. The Plaintiff argues that in rejecting the opinion, the ALJ impermissibly substituted her own opinion as to the proper method of treatment in lieu of a trained medical doctor. [Id. at 8-9]. The Plaintiff maintains that the ALJ may not discredit a treating physician's opinion merely because she disagrees with the physician's treating practices. [Id. at 9].

The Court observes that "[t]he 'playing doctor' prohibition comes into play when the ALJ 'either reject[s] a doctor's medical conclusion without other evidence [or] draw[s] medical

12

conclusions [herself] about a claimant without relying on medical evidence." Hill v. Astrue, No. 5:12CV-00072-R, 2013 WL 3293657, at *3 (W.D. Ky. June 28, 2013) aff'd sub nom. Hill v. Comm'r of Soc. Sec., 560 F. App'x 547 (6th Cir. 2014) (quoting Armstrong v. Barnhart, 287 F.Supp.2d 881, 887 (N.D. Ill. 2003)). That is simply not the case here. The ALJ cited multiple reasons, supported by the record, for discounting Dr. Mandrell's opinion.

First, the ALJ did not discount the opinion simply over a disagreement of treating practices. Emergency room records cite a dependency on narcotic pain medication as evidenced by the Plaintiff's withdrawal episodes and declining rehab. In addition, Dr. Reid suggested alternative treatment methods which were never pursued by the Plaintiff. MRIs performed by Dr. Reid, as well as other imaging studies [Tr. 206, 294, 550], denoted a lack of spinal stenosis – an impairment Dr. Mandrell noted as justifying continued narcotic use. Moreover, non-examining state agency physician Keith Langford, M.D., noted that it was "unfortunate" that the Plaintiff was dependent on oxycodone and that treatment visits were primarily for oxycodone refills. [Tr. 962]. The ALJ expressed concern over Dr. Mandrell's continued actions of prescribing large doses of narcotic medication over the course of seven years despite his documented reluctance to do so, and Dr. Mandrell's "wholehearted acceptance" of the Plaintiff's subjective allegations with little supporting objective evidence. This evidence, all cited by the ALJ, reasonably gave the ALJ cause for concern over the reliability and supportability of Dr. Mandrell's opinion and his decision to almost exclusively treat the Plaintiff with large doses of narcotic pain medication for an extensive period of time.[2] See Stallworth v. Astrue, No. 3:08cv00036, 2009 WL 335317, at *9 (S.D. Ohio,

---

[2] The Court also observes that Dr. Mandrell's assertion that the Plaintiff's medication would prevent him from maintaining concentration or task performance for two hours at a time [Tr. 968] is contradicted by Dr. Mandrell's treatment records which consistently note that the Plaintiff does not experience adverse side effects with his medications, nor does it interfere with activities of daily living. [Tr. 359, 372, 642. 659, 687, 701, 714, 783, 797, 981, 984, 995, 999, 1006].

13

Feb. 10, 2009) ("[A]n ALJ must not substitute his own judgment for a physician's opinion without relying on other evidence or authority in the record.") (quoting Clifford v. Apfel, 227 F.3d 863, 870 (7th Cir. 2000)).

Second, the ALJ found competing medical opinions were better supported by the record. Specifically, the ALJ credited the May 2012 consultative opinion of Dr. Summers who found that the Plaintiff would have difficulty bending, stooping, kneeling, squatting, crouching, crawling, climbing, and lifting more than twenty pounds, as well as standing or walking more than two hours straight or more than four hours total in a workday. [Tr. 567]. While the Plaintiff had decrease range of motion in the lumber spine and an abnormal gait, which the ALJ found supported some level of underlying chronic back pain, Dr. Summers also found that the Plaintiff exhibited symmetrical reflexes, negative for straight-leg raise testing in the seated and supine position, full range of motion in all other joins, and normal strength, including grip. [Tr. 15, 566-67]. Dr. Summers' observations are consistent with examination findings made by other medical providers of record who noted negative straight-leg raises and a lack of radicular pain. [Tr. 298, 567, 920]. Moreover, an x-ray performed by Dr. Summers demonstrated normal vertebral alignment, well maintained vertebral body height and intervertebral disc spaces, and unremarkable sacroiliac joints. [Tr. 573]. The ALJ found that Dr. Summers' opinion was well supported by his own examination. [Tr. 17].

In addition, non-examining state agency physician William Downey, M.D., concluded that the Plaintiff was capable of light exertion with occasional postural movements and should avoid concentrated exposure to hazards. [Tr. 578-86]. Dr. Downey's opinion was affirmed by a second non-examining state agency physician, Dr. Langford. [Tr. 962]. The ALJ credited these opinions as well, but out of an abundance of caution found that the Plaintiff's ability to stand and walk was

more restricted than the state agency physicians had opined. [Tr. 17]. The ALJ's decision to defer to other medical opinions of record was well within the ALJ's purview as factfinder. See Friend v. Comm'r of Soc. Sec., 375 F. App'x 543, 551 (6th Cir. 2010) (per curiam) (holding that the treating physician rule is not "a procrustean bed, requiring an arbitrary conformity at all times.").

Based upon the foregoing, the Court finds that the ALJ provided good reason, supported by substantial evidence, for rejecting Dr. Mandrell's opinion.

### B. Psychological Consultative Examiner William Kenney, Ph.D.

The Plaintiff also contends that the ALJ did not properly considered the opinion of consultative examiner William Kenney, Ph.D.

Dr. Kenney performed an examination on May 29, 2012. [Tr. 575-77]. The Plaintiff reported some mental health treatment as a child due to abuse. [Tr. 575-76]. He related that he largely lives a reclusive lifestyle, explaining that although he lives with his parents, they may not see him for three to four days because he sleeps and stays in his room. [Tr. 576]. He has little interaction with other people and usually only leaves the house to stop at a convenience store a few times a week. [Id.]. The Plaintiff also explained that he does not dress every day, will go two weeks without showering, does not change the sheets on his bed or perform any household chores, and rarely engages in any activities but sometimes plays poker on his cellphone. [Id.].

Upon examination, the Plaintiff's memory was adequate as he could recall personal information such as his social security number and address, he could name the current and a past president, and he successfully completed serial 7s. [Id.]. The Plaintiff's affect, however, was noted as restricted. [Tr. 577]. The Plaintiff reported low energy, feelings of worthlessness, and issues with anxiety and stress. [Id.]. Dr. Kenney concluded that the Plaintiff had mild limitations

15

in his ability to understand and remember, moderate to marked limitations in social interaction, and marked limitations in concentration, persistence, and adaption. [Id.].

The ALJ observed that the Plaintiff's mental health problems were not well supported by the record. [Tr. 16]. In particular, the ALJ noted that the Plaintiff had not sought mental health treatment for his depression or anxiety beyond longtime use of Valium prescribed by Dr. Mandrell. [Id.]. Although Dr. Mandrell referred the Plaintiff to Helen Ross McNabb in 2013 for mental health services [Tr. 973], the ALJ noted that there was no evidence that the Plaintiff attended. [Id.]. Specifically discussing Dr. Kenney's opinion, the ALJ found that the Plaintiff's report that he seldom engaged in any activities or interacted with others was contradicted by his testimony, as well as statements in his Function Report, that he regularly transports his daughter to and from school and picks-up food for her. [Tr. 16-17]. Moreover, the ALJ noted that the Plaintiff attributed his lack of activity primarily to his back impairment, not emotional problems. [Tr. 17].

The ALJ gave "some weight" to Dr. Kenney's opinion, finding that the lack of mental healthcare undermined the restrictive limitations assessed. [Tr. 18]. Additionally, the ALJ found the opinion was undermined by examination results, including that the Plaintiff demonstrated intact memory, intact ability to perform serial 7s, and an ability to regularly play poker on his cellphone. [Id.]. Moreover, the ALJ found the Plaintiff's recorded interaction with the consultative examiners and the Plaintiff venturing from his home more regularly than reported to Dr. Kenney demonstrated a higher level of social functioning and adaptability than Dr. Kenney had opined. [Id.]. The ALJ gave "significant weight" to the non-examining state agency physicians who opinioned limitations consistent with the Plaintiff's residual functional capacity ("RFC"). [Tr. 12, 615-17, 961]. The ALJ concluded that their opinions were "well supported by the claimant['s] appropriate interaction during his encounter with Dr. Kenney and his performance

16

on mental status examination, as well as by his presentation during the hearing during which demonstrated logical and coherent thought process and testimony." [Tr. 18].

The Plaintiff argues that the ALJ misstates Dr. Kenney's finding regarding the Plaintiff playing poker on his cellphone. [Doc. 13 at 9]. The Plaintiff submits that he reported he "sometimes" plays poker on his cellphone, not "regularly" as stated by the ALJ. [Id.]. In addition, the Plaintiff contends that occasionally using his cellphone for recreational purposes is not indicative of his ability to perform work-related activity. [Id.]. The Plaintiff further argues that the ALJ failed to note that the Plaintiff will go two weeks without showering, stays in in his room for days at a time, and does not participate in any hobbies. [Id.].

Although the Plaintiff is correct that he reported he "sometimes" plays poker on his phone [Tr. 576], the ALJ properly consider Dr. Kenney's opinion and cited specific evidence for finding that the Plaintiff did not have greater mental limitations beyond those accounted for by his RFC. Most notably, the lack of mental health treatment weakens the Plaintiff's assertions that his depression and anxiety are debilitating. See Strong v. Soc. Sec. Admin., 88 F. App'x 841, 846 (6th Cir. 2004) ("In the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment. A failure to do so may cast doubt on a claimant's assertions of disabling pain."); see also Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *7-8 (July 2, 1996) (stating that an "individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints"). Although Dr. Mandrell prescribed medication, his treatment notes recite little in the form of complaints, concerns, or treatment for the Plaintiff's emotional problems beyond medication refills.

And while playing cellphones games may not amount to an ability to perform substantial

17

gainful activity, the ALJ cited the activity for the purpose of demonstrating that the Plaintiff was not as limited as alleged or opined by Dr. Kenney. In this regard, the ALJ additionally explained that the Plaintiff's testimony and Function Report indicated that he engaged in activities and with others more frequently than he reported to Dr. Kenney, and that the Plaintiff's physical impairments were the underlying impairments keeping him from work. Moreover, the ALJ acknowledged that the Plaintiff seldom showered or left his room. [Tr. 17].

As a one-time examiner, Dr. Kenney was not entitled to any special degree of deference. Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994). Instead, the weight assigned to an examining source is dependent on the opinion's supportability, consistency of the opinion with other evidence in the record, specialization of the examining source, and other factors which may support or undermine the opinion. 20 C.F.R. § 416.927(c). Here, the record contained contradicting evidence, including competing medical opinions, that the Plaintiff's depression and anxiety are not as severe as alleged.

Accordingly, the Court finds that Plaintiff's arguments in this regard are without merit.

18

## VI. CONCLUSION

Based upon the foregoing, it is hereby **RECOMMENDED**[3] that the Plaintiff's Motion for Judgment on the Pleadings [**Doc. 12**] be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 16**] be **GRANTED**.

Respectfully submitted,

s/ C. Clifford Shirley, Jr.
Chief United States Magistrate Judge

---

[3] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140 (1985). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).